**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

**EDWIN GARCIA,**

                      **Petitioner,**                                **OPINION and ORDER**

                    **-against-**                                **04-CV-2045 (NG)**

**FRANK TRACY,**

**Superintendent,**

                      **Respondent.**

-------------------------------------------------------------x

**GERSHON, United States District Judge:**

*Pro se* petitioner Edwin Garcia brings this petition for a writ of habeas corpus, pursuant to

28 U.S.C. § 2254, challenging his March 28, 2001 conviction after a jury trial in New York Supreme

Court, Queens County (McKay, J), of one count of burglary in the second degree (N.Y. Penal Law

§ 140.25(2)) and one count of criminal possession of stolen property in the fifth degree (N.Y. Penal

Law § 165.40). Petitioner was sentenced, as a second felony offender, to concurrent prison terms

of twelve years on the burglary count and one year on the possession of stolen property count. On

October 17, 2002, the Appellate Division, Second Department, unanimously affirmed petitioner's

conviction, and leave to appeal to the New York State Court of Appeals was denied. *People v.*

*Garcia*, 299 A.D.2d 493 (2d Dept. 2002), *lv. denied*, 99 N.Y.2d 614 (2003).

THE TRIAL

Taken in the light most favorable to the State, the evidence at trial established the following: At approximately 4:00 p.m. on February 9, 2000, Martha Naranjo looked out the rear window of her Queens apartment. Ms. Naranjo saw two men, later identified as petitioner and co-defendant David Castro, peering into the windows of various apartments in her building. Petitioner, who was wearing a gray jacket, climbed over a small wall and began to look into the windows of another apartment building. Petitioner called out for Mr. Castro to join him. When petitioner opened one of the windows, and he and Mr. Castro climbed inside an apartment, Ms. Naranjo called the police.

At approximately 4:45 p.m., Police Officers Michael Broderick and Frank Ferrara responded to Ms. Naranjo's report. Ms. Naranjo described petitioner and Mr. Castro to the officers and showed them the apartment, located at 42-45 Hampton Street, that petitioner had entered. Police Sergeant Gleason then ordered that the building be searched floor by floor. Subsequently, Officers Broderick and Ferrara saw that the door to apartment 303 was open and that the apartment was in a disheveled state. There were bags on the floor containing a VCR and some stereo equipment, drawers in the apartment were open and clothes were strewn across the floor, and the bed had been turned over.

Sergeant Gleason found Mr. Castro crouching under the sink in the incinerator room on the seventh floor. At approximately 5:05 p.m., he brought Mr. Castro out of the building. He was identified by Ms. Naranjo and arrested. A folding knife, a set of keys, and a gold metal ring were recovered from Mr. Castro. Five minutes later, Officer Broderick also found petitioner hiding in the seventh floor incinerator room. He brought petitioner out of the building, and he too was identified

by Ms. Naranjo and arrested. Ms. Naranjo also identified petitioner at trial.[1]

Mohan Singh, who resided in Apartment 303 at 42-25 Hampton Street, had locked the front door when he went to work on February 9, 2000. When he returned home around midnight, he noticed that his apartment had been broken into and his gold ring was missing. Mr. Singh went to the police station, where an officer showed him the gold ring that had been recovered from co-defendant Castro. Mr. Singh confirmed that the ring belonged to him.

Officer Robert Brinkerhoff, of the forensic investigation division of the Police Department, dusted Apartment 303 for fingerprints. He lifted four prints from the outside of the kitchen window, which was determined to be the point of entry. In addition, he lifted two prints from the furniture in the bedroom. Another officer took a set of prints from petitioner after his arrest, including palm-prints.

Detective John Hickey, of the latent print unit, compared the prints that had been recovered from the apartment with the set of petitioner's finger and palm prints. Detective Hickey had been working at the latent print unit for five and a half years. He had done "[h]undreds of thousands" of comparisons, and had previously testified as an expert in ten to twelve court proceedings. Tr. 385. When the prosecutor asked that Detective Hickey be qualified as an expert, the court asked

---

[1]At trial, when asked initially if she recognized anyone in the courtroom, Ms. Naranjo stated that she did not. Tr. 219. She continued to say that she was not sure because she could not remember that well. Tr. 220. She then indicated that she wanted to clarify her statement. At this time, the judge had the jury removed from the courtroom. Outside the presence of the jury, Ms. Naranjo pointed to the petitioner and stated, "that fella that's there, the way . . . he is shaved, his facial features and his head remind me a little of the fella I saw that day with the gray shirt." Tr. 221. The jury was then brought back into the courtroom. The prosecutor asked Ms. Naranjo to clarify her prior statement and Ms. Naranjo identified petitioner as the individual wearing the gray jacket. Tr. 223-24. On cross-examination, Ms. Naranjo explained why she initially had a problem identifying the petitioner. She noted that, at first, she "didn't look at him for too long" and stated that some of her hesitation in making the identification stemmed from the fact that "it had been a year already since this happened [the burglary] and [she] didn't remember the features of the person that [she] saw." Tr. 251. She then confirmed her identification and stated: "The shape of the head and now that I'm observing him and I'm observing him well, it's the person that I saw." Tr. 252.

petitioner's counsel if he wanted to question Detective Hickey as to his qualifications. Counsel requested that he be allowed to reserve his questions until cross-examination, and the court allowed Detective Hickey to testify as an expert, and give opinion evidence, subject to cross-examination. Later, after petitioner's counsel had cross-examined Detective Hickey, counsel withdrew his objection to Detective Hickey being deemed an expert.

Detective Hickey defined latent prints for the jury, and how they are left on various surfaces. He described the process of comparing prints and testified that "[w]hen I look at those two prints and I find the characteristics that I'm satisfied with and I'm very happy with those, that's when I will determine that to be a positive identification, a positive match." Tr. 391-92. Detective Hickey also described the "different characteristics" of the ridges in finger and palm prints and how each individual has a unique finger and palm print. Tr. 388.

Next, the detective described how he had compared the latent prints recovered from the crime scene, and petitioner's inked prints. Upon receiving the latent print and fingerprint card for examination, the prosecutor asked Detective Hickey if he had "arrived at any conclusion." Tr. 395. Defense counsel objected, and the court sustained counsel's objection, stating that "I think more foundation should be laid." Tr. 395. Detective Hickey then defined the term "of value" as being a "good enough print" and one which has enough clear characteristics to satisfy him. Tr. 395-98. He determined that these prints were "of value." Tr. 395-96. The prosecutor then asked Detective Hickey again if he had reached a conclusion, and defense counsel objected, claiming that the detective had still failed to provide a sufficient foundation for his conclusion. The objection, however, was overruled. Detective Hickey resumed testifying, but the court interjected: "[s]ee I thought we were going to hear first did you come to a conclusion with respect to those two [prints]."

Tr. 398. Detective Hickey replied that he did come to a conclusion and the court stated: "[b]efore you tell what the conclusion was, tell us what you based it on." Tr. 398. Detective Hickey then explained that he placed the two items side by side and determined that one of the latent prints was of a palm, and in comparing that print to petitioner's, he determined that petitioner's left palm print was identical to the latent print. He based that determination upon fifteen identical points of comparison, scars, and "numerous crease details" that were common to both prints. Tr. 400.

Detective Hickey did not record what specific points of comparison matched. He explained that, in cases in which an examiner determines that prints match, it was standard procedure for a second examiner to also perform a comparison. As a result, the specific characteristics that matched were not recorded. Detective Hickey offered to take out his magnifying glass and compare the latent print (People's Exhibit 19) and petitioner's inked prints (People's Exhibit 20) on the stand so that he could specify what characteristics matched, but petitioner's counsel said he had a "problem with that," and the comparison was not done. Tr. 408. However, petitioner's counsel did question Detective Hickey as to what the points of comparison were and the court interjected: "[h]ow many do you need? Is there some number that you are trained to understand is sufficient number of comparisons for you to reach a scientifically certain conclusion." Tr. 406. Detective Hickey responded:

> Scientifically, we don't have a set number because you could have certain points and certain characteristics in a finger that are so unique that you have never seen before that there is no set number of what you need to make an identification.

Tr. 407.

In colloquy, after Detective Hickey completed his testimony, petitioner's counsel renewed his objection to the answers the detective gave on the stand and claimed that there was an

"insufficient foundation" for Detective Hickey's conclusions and that his determinations were not based on "reasonable scientific certainty." Tr. 415. The court rejected the objection.

Petitioner's counsel argued in his summation that the jury should not accept Detective Hickey's conclusions. The court charged the jury as follows on this subject:

> Now, in this case you will recall that witness - a Detective John Hickey gave testimony concerning his qualifications as an expert in the field of what is called fingerprint and palm print comparison. Where scientific, technical or other specialized knowledge will assist the jury to understand the evidence or to determine a fact in issue, our law permits a witness qualified as an expert by knowledge, skill, experience training or education to state his opinion on a question in controversy upon the trial for the information of the court and the jury.
>
> Please understand that the opinions stated by the expert who testified before you were based on particular facts as the expert himself observed them to assist you in deciding the question in controversy at the trial which has to do with the identity of the person who made the palm print on the window of the apartment in question. You may consider the opinion of the expert together with the reasons given for such opinion and together with the qualifications and credibility of such expert you must also consider. You may reject an expert's opinion if after careful consideration of all the evidence in the case, expert and otherwise you disagree with the expert's opinion.
>
> In other words, you and you alone are to form your own opinion or draw your own conclusion as to any question in controversy in this case. The opinion of the expert witness is subject to the same rules and tests concerning reliability of the testimony of any other witness.

Tr. 488-89. During deliberations, the jury sent a note asking: "After Detective Hickey made his determination, hit, match, what was said about the second person review. Further, is there any notation of the second person's review?" Tr. 522. After the read-back of the portion of cross-examination responsive to the jury's inquiry about the second fingerprint examiner, the court stated: "we have not identified any other evidence or record or notation in this record regarding this - any second person's review." Tr. 522.

The jury convicted petitioner of second-degree burglary and fifth-degree criminal possession

of stolen property. Petitioner appeared for sentencing on March 28, 2001, and he was adjudicated a second felony offender based on a 1996 attempted third-degree robbery conviction. Petitioner was sentenced to concurrent terms of twelve years, with five years of post-release supervision on the burglary count, and one year on the possession of stolen property count.

POST-VERDICT STATE PROCEEDINGS

In May 2002, petitioner's appointed counsel filed a brief appealing his conviction to the Appellate Division, Second Department, which raised the following claims: (1) petitioner had been deprived of a fair trial by Detective Hickey being allowed to testify that "there was a certain match" between petitioner's palm print and one of the latent prints found within the apartment when Detective Hickey "did not remember or memorialize his findings as to the location or nature of any of the points of comparison he claimed to have observed;" (2) petitioner's twelve year sentence was "harsh and excessive" and warranted reduction in the interest of justice; (3) petitioner's sentence as a second felony offender violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), since the enhanced sentence "was based upon factual findings made by the court, rather than the jury." On November 18, 2002, the Appellate Division, Second Department, unanimously affirmed petitioner's conviction. *People v. Garcia*, 299 A.D.2d 493 (2d Dept. 2002). The Appellate Division held that the trial court "properly exercised its discretion in determining that the prosecution's fingerprint expert laid a sufficient foundation to provide the jury with the factual basis for his conclusion that the [petitioner's] fingerprints matched the latent prints taken from the scene of the crime . . . and in concluding that the weaknesses in the expert's testimony went to the credibility and weight of the evidence rather than to its admissibility." *Id.* The Appellate Division also held that "[t]he sentence imposed . . . was not excessive," and that petitioner's "remaining contention [wa]s without merit."

7

*Id.*

By letters dated December 23, 2002, and January 13, 2003, petitioner's counsel requested leave to appeal to the New York Court of Appeals and raised the same claims brought on appeal to the Appellate Division. On February 14, 2003, this application was denied. *People v. Garcia*, 99 N.Y.2d 614 (2003).

## HABEAS PETITION

In his *pro se* petition for a writ of habeas corpus, dated May 7, 2004, petitioner raises the three claims brought on direct appeal: (1) he was "deprived of a fair trial" by the admission into evidence of Detective Hickey's expert testimony because the detective's conclusion regarding the palm print match could not be adequately assessed by the jury, since he did not memorialize his findings as to the location or nature of any of the points of comparison he claimed to have observed; (2) his adjudication as a second felony offender "violated his right to a jury trial" under *Apprendi*, since the enhanced sentence was based upon a factual finding made by the court, rather than the jury; (3) his twelve-year sentence of imprisonment was "harsh and excessive" and should be reduced in the interest of justice.

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that a petition for a writ of habeas corpus shall not be granted on a claim that was "adjudicated on the merits" in a state court proceeding unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1). "A state-court decision is contrary to [the Supreme] Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. ---- , 125 S. Ct. 1432, 1438 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court need not set forth the legal basis for resolution of federal claims in order for the broadly deferential standard set out in AEDPA to apply. *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). Rather:

> [T]he plain meaning of § 2254(d)(1) dictates [that for] the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

*Id.* at 312.

DISCUSSION

A. Admission of Fingerprint Expert's Testimony

Petitioner first claims that he "was deprived of a fair trial by [the] admission into evidence" of Detective Hickey's testimony because the fingerprint expert's conclusions "could not be adequately assessed by the jury." He claims that a proper foundation for this testimony was not laid, since Detective Hickey did not "memorialize his finding as to the location or nature of any points of comparison he claimed to have observed." Therefore, petitioner argues that he is entitled to habeas relief as a result of the admission into evidence of Detective Hickey's testimony.

Under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." To be entitled to habeas relief a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. Claims of erroneous evidentiary rulings by a state trial court "generally do not rise to the level of constitutional violations upon which a federal court may issue a writ of habeas corpus." *Lall v. Burge*, No. 02 CV 2428, 2004 WL 502551, at *6 (E.D.N.Y. Mar. 12, 2004); *see also Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) (citing *Lipinski v. New York*, 557 F.2d 289, 292 (2d Cir. 1977)).

At trial, petitioner's counsel did not object to Detective Hickey being found qualified as an expert at print comparison and identification. Nor does petitioner contend in his petition for habeas relief that Detective Hickey should not have been found qualified as an expert. Petitioner's only complaint is that Detective Hickey did not provide a proper foundation for his conclusion that there was a "certain match" because Detective Hickey had not "memorialized his finding as to the location or nature of any of the points of comparison he claimed to have observed." However, contrary to petitioner's contention, there is no federal constitutional principle requiring that a fingerprint expert's finding must be memorialized in a certain manner, or that expert opinion evidence is inadmissible if all facts or data underlying the expert's opinion have not been recorded. Detective Hickey explained why he had not memorialized the specific points of comparison. It was standard procedure in the police laboratory that, where one examiner had determined that prints matched, another examiner would independently examine the same prints. In such situations, the first examiner would not record his or her specific points of comparison, apparently so as not to influence

10

or bias the second examiner. This explanation, like the rest of Detective Hickey's testimony, was subject to cross-examination. Moreover, Detective Hickey offered to take out his magnifying glass and compare the prints on the stand so that he could specify what characteristics matched, which would have eliminated any foundational issue. However, petitioner's counsel objected to this offer, and the comparison was not done.

As the foregoing facts indicate, petitioner has not demonstrated that the state courts' decisions affirming the conviction were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Insofar as the petition can be read as challenging the jury's finding of guilt, no basis for relief is present. The evidence was constitutionally sufficient to prove guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 313 (1979). Petitioner's counsel argued in his summation at trial that Detective Hickey's conclusions should not have been accepted by the jury. However, "assessments of the weight of the evidence or the credibility of witnesses are for the jury" and a habeas court must "defer to the jury's assessments of both of these issues." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). A claim concerning the weight of the evidence does not present a federal constitutional issue. *See Torres v. Fischer*, No. 03 CV 3862, 2004 WL 50871, at *4 (S.D.N.Y. Jan 12, 2004).

B. Enhanced Sentence as a Second Felony Offender

Petitioner contends that his sentence as a second felony offender violated his rights to due process of law, pursuant to *Apprendi*, and the Fourteenth Amendment to the U.S. Constitution, because "the enhanced sentence was based upon factual findings made by the [c]ourt, rather than

the jury."

In *Apprendi*, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. According to the Second Circuit, *Apprendi* applies "only when a sentencing court's findings increase the penalty faced by the defendant above the statutory maximum for a given count, and not when they merely affect the length of a sentence within the statutory range." *United States v. White*, 240 F.3d 127, 136 (2d Cir. 2001).

Under New York's sentencing structure, an individual "convicted of a felony" will be classified as a second felony offender and will receive an enhanced sentence if he or she has "previously been subjected to one or more predicate felony convictions." N.Y. Penal Law § 70.06(1)(a). Thus, a "second felony offender is, as the name implies, someone who has a prior felony conviction," and "[i]n such a case, the sentencing court must impose an enhanced sentence, based solely on the fact of the prior felony conviction." *Besser v. Walsh*, 02 CV 6775, 2003 WL 22801952, at *3 (S.D.N.Y. Nov. 26, 2003).

Here, the record shows that petitioner was adjudicated a second felony offender and that petitioner's sentence did not exceed the statutory maximum. Because petitioner had previously been convicted of a felony, he was classified as a second felony offender, and the sentencing judge was required to "impose an enhanced sentence, based solely on the fact of the prior felony conviction." *Id.* As a result, under New York's sentencing scheme, petitioner was subject to a determinate sentence of from five to fifteen years. N.Y. Penal Law § 70.06(6)(b). Petitioner received a sentence of twelve years. Accordingly, because the sentencing judge did not "increase the penalty faced by

12

the defendant above the statutory maximum," petitioner's sentence did not violate *Apprendi*. *White*, 240 F.3d at 136. Therefore, petitioner has not demonstrated that the state courts' decision affirming the conviction was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

C. Harsh and Excessive Sentence

Petitioner claims that his "twelve-year sentence of imprisonment was harsh and excessive and should be reduced in the interest of justice." This claim is not cognizable on habeas review.

Only those sentences that are "grossly disproportionate" to the crime violate the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991). In the present case, no such disproportionality is present. Further, habeas corpus review of a state sentence is circumscribed, especially when the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Bellavia v. Fogg*, 613 F.2d 369, 373-74, n.7 (2d Cir. 1979) (sentencing statute is properly the province of the state legislature and long mandatory sentence imposed pursuant to statute does not constitute cruel and unusual punishment).

In the present case, it is undisputed that petitioner's sentence of twelve years for burglary in the second degree is within the range prescribed by state law. Burglary in the second degree is defined as a class C violent felony under New York law. N.Y. Penal Law §§ 70.02(1)(b), 140.25(2). Since petitioner was classified as a second felony offender, under New York's sentencing scheme, he was subject to a determinate sentence of from five to fifteen years. N.Y. Penal Law § 70.06(6)(b). Therefore, because petitioner's sentence was proper under New York law, his harsh and excessive sentence claim does not raise a constitutional question and is unreviewable in this Court. *Giles v. Kuhlmann*, 98 CV 7368, 2002 WL 1751401, at *8 (E.D.N.Y. July 11, 2002); *see also*

*White v. Keane*, 969 F.2d at 1383; *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988).

CONCLUSION

For the reasons set forth above, petitioner's application for a writ of habeas corpus is denied in its entirety. The Clerk of Court is directed to close this case. Since petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied pursuant to 28 U.S.C. § 2253(c).

**SO ORDERED**

_____/s/_____

**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
      April 18, 2005